IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TARVARCUS MILLER                                                                  PETITIONER

v.                                                                       No. 3:14CV196-MPM-RP

MR. DENMARK, ET AL.                                                             RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Tarvarcus Miller for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Mr. Miller has filed a Traverse. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 will be denied.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2254**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right "of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion, public Safety may require it." *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

**Procedural Posture**

The petitioner, Tarvarcus Miller, is in the custody of the Mississippi Department of Corrections and is currently housed at the Marshall County Correctional Facility in Holly Springs, Mississippi. He was convicted of one count of sale of a controlled substance in the Circuit Court of Lafayette County, Mississippi. On July 6, 2012, he was sentenced as a habitual offender to serve thirty years in the custody of the Mississippi Department of Corrections ("MDOC"). *See* State Court Record ("SCR"), Vol. 1, p. 39.

Miller appealed his conviction and sentence in the Mississippi Supreme Court. On appeal, he raised the following ground for relief, *through counsel*:

> Issue 1. The trial court deprived Miller of his Sixth amendment right to cross examination and confrontation when it allowed Teresa Hickman, a person who neither analyzed the substance nor observed the analysis of the substance, to testify that State's exhibit 1 contained .6 grams of cocaine.

He then raised the following additional grounds for relief *pro se* in his supplemental brief:

> Issue 2. Insufficiency of the evidence.

Issue 3.    Overwhelming weight of the evidence.

Issue 4.    The trial court erred by denying defendant's jury instruction D-8.

Issue 5.    The trial court erred by not granting the defense a continuance after undersigned informed the court that the defendant was under the influence of marijuana when I appeared for trial.

Issue 6.    Jury Instructions which contained language relating to offenses other than sale of cocaine under the controlled substance statu[te]was plain error.

On February 4, 2014, the Mississippi Court of Appeals affirmed the judgment of the circuit court. *Miller v. State,* 144 So.3d 199 (Miss. Ct. App. 2014), *reh'g denied*, June 10, 2014, *cert. denied,* Aug. 7, 2014 (No. 2012-KA-01630-COA). According to the officials of the Mississippi Supreme Court Clerk's Office and the Lafayette County Circuit Clerk's Office, Miller has not filed a motion for post-conviction relief.

In the instant petition for a writ of *habeas corpus*, Doc. 1, Miller raises the following grounds for relief, *pro se*:

**Ground One**.    Violation of the Confrontation Clause.

**Ground Two**.    Sufficiency of the Evidence.

**Ground Three**.    The DA [erred] during closing arguments. Violated defendant's due process rights under the 14th amendment.

**Ground Four**.    Denial of Jury Instruction D-8.

On November 19, 2014, the State filed a motion to dismiss the petition for failure to exhaust his state court remedies. Doc. 11. The State argued that the claim raised in Ground Three of Miller's petition had not yet been exhausted in the state courts because the Mississippi Court of Appeals interpreted Miller's argument as a challenge to the jury instructions. This court held that "Miller did, however, completely clarify the issue in his petition for writ of certiorari, which the Mississippi Supreme Court

denied. As such, the court holds that Miller presented the issue to the Mississippi Supreme Court and has thus exhausted all grounds for relief, and the instant motion to dismiss is denied." Doc. 15, p. 2.

## Facts

Lafayette County Metro Narcotics Agent Barry Magee set up a controlled purchase of cocaine using confidential informant Justin Harris. Harris met with officers who searched his person and vehicle immediately before the controlled buy. SCR, Vol. 2, p. 63. Harris's vehicle was equipped with a visual recording device, and Harris wore an audio recording device on his person. SCR, Vol. 2, p. 63 and 86. Harris then called Tarvarcus Miller to arrange a purchase of cocaine. SCR, Vol. 2, p. 78. Per Miller's instructions, Harris picked him up at an apartment complex and drove him to another apartment complex. SCR, Vol. 2, p. 78. Upon arrival at Cambridge Station Apartments, Miller got out of the car and went into an apartment while Harris waited in the car. SCR, Vol. 2, p. 78. Miller was in the apartment for ten to fifteen minutes before coming back with cocaine. SCR, Vol. 2, p. 78. Miller got in Harris' car and gave him the cocaine in exchange for the $60 buy money, which Agent Magee had supplied to Harris. SCR, Vol. 2, p. 78. Harris then dropped Miller off and drove to the post-buy location to give Agent Magee the drugs he obtained from Miller. SCR, Vol. 2, p. 79 and 81. The video of the transaction was played for the jury at trial. SCR, Vol. 2, p. 82. Forensic analyst Teresa Hickman testified that the substance submitted by Magee to the crime lab was 0.6 grams of cocaine. SCR, Vol. 2, p. 108.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all the petitioner's grounds for relief on the merits and decided those issues against the him; hence, these claims are barred from

*habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be

*objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to these grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Ground One: Confrontation Clause**

In Ground One, Tarvarcus Miller alleges that the State violated his right to confront the witnesses against him because he could not examine or cross-examine the Mississippi Crime Laboratory Analyst who conducted the testing of the substance and determined that it was 0.6 grams of cocaine. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI., cl. 2. Thus, the Sixth Amendment guarantees a defendant's right to confront witnesses who "bear testimony" against him. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354 (2004). The Confrontation Clause applies only to statements offered to prove the truth of the matter asserted. *Williams v. Illinois*, ⎯⎯ U.S. ⎯⎯, 132 S.Ct. 2221, 2228 (2012)(plurality opinion), *Crawford*, 541 U.S. at 59,

n. 9. A witness' testimony against a defendant is thus inadmissible "unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009) (citing *Crawford*, 541 U.S. at 54). Under the Confrontation Clause, a defendant is not required to seek the attendance and testimony of witnesses offering evidence against him; instead, the prosecution has an affirmative duty to call each witness, elicit testimony, and present the witness for cross-examination:

> Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via *ex parte* affidavits and waits for the defendant to subpoena the affiants if he chooses.

*Melendez-Diaz v. Massachusetts*, 557 U.S. at 324. The prosecution may, nonetheless, introduce the statement of a witness who is unavailable, even absent a prior opportunity for cross-examination by the defense, under two circumstances: (1) when the statement is not "testimonial,"[1] and (2) when the witness is unavailable because the defendant engaged in wrongdoing designed to prevent the witness from testifying.[2]

## Testimonial v. Non-Testimonial

The out-of-court statement of a witness is *testimonial* if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz*, 557 U.S. at 310 (quoting *Crawford v.*

---

[1] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009).

[2] *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678 (2008); *see also* Fed. R. Ev. 804(b)(6).

*Washington*, 541 U.S. 36, 51-52, 124 S.Ct. 1354 (2004)). "[Statements] are testimonial when the circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-2274 (2006). The class of testimonial statements covered by the Confrontation Clause includes:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[, as well as] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[.]

*Id*.

*Non-testimonial* statements include those made about events "as they were actually happening," as opposed to "describing past events." *Davis* 547 U.S. at 827, 126 S.Ct. at 2276 (2006). Such non-testimonial statements are elicited to "*resolve* [a] present emergency, rather than to simply learn (as in *Crawford*) what happened in the past." *Id*. (emphasis in original). The Supreme Court, in *Giles*, intimated in dictum that incriminating statements made to friends or to doctors during medical treatment are not testimonial, and would be excluded, "if at all, only by hearsay rules . . . ." *Giles*, 554 U.S. at 376, 128 S.Ct. at 2693-2693.

In this case, forensic analyst Robert Reed conducted the tests on the substance and identified it as cocaine; however, by the time of trial, he had moved out-of-state, beyond the subpoena power of the prosecution, and was thus unavailable to testify. The State, instead, called Teresa Hickman, the technical reviewer of the report. The defense filed a motion in limine asking the trial court to exclude Ms. Hickman's testimony as to the identity of the substance. Ms. Hickman was not physically present when Reed performed the analysis of the drug; as such, she did not witness the

- 8 -

actual testing performed. For this reason, Tarvarcus Miller argued that the State violated his Sixth Amendment right to confront the witness against him – because the real witness against him was Robert Reed (the one who conducted the test) – and that Teresa Hickman merely repeated his findings. The circuit court denied the motion in limine and allowed Hickman to testify.

Hickman testified regarding the composition, quality, and net weight of the substance. Though Ms. Hickman had no independent recollection regarding the testing of that particular sample or her review of it, she identified her signature and initials on the case file, signifying that she was the one who conducted the technical review of the case. SCR, Vol. II at 105-106. She also testified regarding the laboratory procedures and protocols in place to conduct tests and to prevent contamination of samples, mislabeling them, or other problems. *Id*. at 106-112. Ms. Hickman described her technical review of Mr. Reed's analysis:

> I take his work and I check each piece of data technically, which means I'm checking the color pattern, the colors that he found, if there is any variation in the way I would have done it, which is the standard operation procedure at the crime lab requires.
>
> I then check the incrementation because he performed two examinations. I take the spectra. I check to make sure the quality match is what it should be, and I check to verify the substance is what it should be.
>
> At that point I do what is called an amended review. That's when you look for errors. Then I verify he wrote it up correctly, he spelled words correctly, and he used the proper gram or milligrams in the analysis.
>
> When all of this is checked, and only when all of this is verified that it was done by standard operation procedure, I sign it for the technical review and initial to verify that I amended it also.

SCR, Vol. 2, p. 107-108. At the conclusion of her direct examination, Hickman testified that the substance in State's exhibit S-1 was 0.6 grams of cocaine. *Id.* The Mississippi Court of Appeals

found that her involvement in the analysis of the substance was sufficient to overcome a challenge based upon the Confrontation Clause. *Miller v. State,* 144 So.3d at 202-203.

### The Law Regarding Application of the Confrontation Clause to Testimony by a Supervisor or Reviewer in a Crime Laboratory Is Not "Clearly Established"

Mr. Miller may only prevail on his Confrontation Clause claim if the Mississippi Supreme Court applied the law contrary to precedent clearly established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1), *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). Mr. Miller's claims fail because, even now, the law regarding this issue is not clearly established. As late as last year, the Fifth Circuit Court of Appeals reversed this court's decision to grant *habeas corpus* relief based on facts legally indistinguishable from the present case. *Grim v. Fisher*, 816 F.3d 296, 310 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 211, 196 L. Ed. 2d 163 (2016). In *Grim*, the Fifth Circuit held that *habeas corpus* relief was unwarranted because the Supreme Court has not clearly established that

> when the prosecution introduces a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—the prosecution cannot do so through the in-court testimony of a technical reviewer who signed the report and was more involved in the testing and report preparation than was the witness in *Bullcoming*[.]

*Grim*, 816 F.3d at 310. That is the precise issue Mr. Miller raises in the present case.

In support of this conclusion, the Fifth Circuit noted "[w]idespread disagreement among courts regarding *Bullcoming*," citing *Carey v. Musladin,* 549 U.S. 70, 76, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (the fact that "lower courts have diverged widely" on the question presented "[r]eflect[s] the lack of guidance from this Court" and supports a finding of no clearly established law). As examples, the Fifth Circuit contrasted *United States v. Ignasiak,* 667 F.3d 1217, 1231 (11th Cir. 2012) (admission into evidence of autopsy reports via medical examiner

who "did not personally observe or participate in those autopsies" violated Confrontation Clause) with *United States v. Summers,* 666 F.3d 192, 202–03 (4th Cir. 2011) (supervisor's testimony about his report that was based on data produced by other analysts did not violate Confrontation Clause). *See Grim*, 816 F.3d at 309–310.

Based upon her testimony and the documentary evidence, Ms. Hickman was present in the laboratory when Mr. Reed conducted the testing. She signed or initialed the documents, signifying that she had reviewed his findings and checked the protocols in place. This is more participation than the witness in *Bullcoming*, who had no involvement in the case, other than reviewing the forensic analyst's documents. As Justice Sotomayor explained in her *Bullcoming* concurrence:

> [T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. Razatos conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion of Curtis Caylor's conduct of the testing. The court below also recognized Razatos' total lack of connection to the test at issue. It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results. We need not address what degree of involvement is sufficient because here Razatos had no involvement whatsoever in the relevant test and report.

*Bullcoming*, 131 S.Ct. at 2722. Thus, the Supreme Court has not ruled upon the issue in this case, and the federal district courts and courts of appeal have not come to a consensus.

The law governing this issue was unclear when the Mississippi Supreme Court ruled against Mr. Miller, and it remains unclear at present. As such, the court finds that the Mississippi Supreme Court did not render a decision "contrary to clearly established Federal law, as determined by the Supreme Court of the United States," and Mr. Miller's claim regarding violation of the Confrontation Clause must be denied.

**Ground Two: Sufficiency of the Evidence**

In Ground Two, Tarvarcus Miller challenges the sufficiency of the evidence to sustain his conviction. A challenge to the sufficiency of the evidence can support a claim for *habeas corpus* relief only if the evidence, when viewed in the light most favorable to the State, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). The *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992). Courts may "consider, for instance, whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *United States v. Vargas-Ocampo,* 747 F.3d 299, 301, 135 S. Ct. 170, 190 L. Ed. 2d 121 (5th Cir. 2014).

As set forth above, the State introduced ample evidence to sustain Miller's conviction for the sale or transfer of cocaine. Miller points to alleged discrepancies between Harris' testimony and the video of the controlled buy. However, the jury observed Harris' testimony of the controlled buy, which was corroborated by the video of the transaction. As the Mississippi Court of Appeals held, "such evidence is sufficient to uphold the conviction of sale of a controlled substance, as even the uncorroborated testimony of a single witness is sufficient to support a conviction." *Miller*, 144 So.3d at 203.

It is the jury's province to weigh the evidence presented and arrive at a verdict. The Founders

established in our Constitution that an accused has the right to a trial by jury in a criminal case. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. (emphasis added). The requirement of jury trial in a criminal case is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring).

Law enforcement arranged a controlled buy of cocaine from Tarvarcus Miller using a confidential informant. The jury observed audio and video of the transaction, as well as testimony by the officer overseeing the controlled buy and the confidential informant – and found Mr. Miller guilty of sale or transfer of cocaine. A rational finder of fact could view that evidence in the light most favorable to the prosecution, and find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the Mississippi Supreme Court's resolution of the issue in Ground Two was neither contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Hence, Mr. Miller is not entitled to *habeas corpus* as to this ground for relief.

**Ground Three: Improper Closing Arguments**

In Ground Three, Tarvarcus Miller alleges that the district attorney violated his due process rights during closing arguments by telling the jury that they were allowed to find Miller guilty of

- 13 -

transfer, rather than sale, of a controlled substance. This ground for relief is without merit.

Miller was indicted for violation of Miss. Code Ann. § 41-29-139(a)(1), which states:

> It is unlawful for any person knowingly or intentionally: To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance.

Miller's indictment uses this exact language. SCR, Vol. 1, p. 1. Jury instruction S-1 also tracks the language of the statute – and thus informed the jury of the elements of the crime. SCR, Vol. 1, p. 22. This instruction, which called for the jury to find Miller guilty of sale of a controlled substance if the jury found beyond a reasonable doubt that Miller "sold, transferred, distributed, or delivered" cocaine to the confidential informant, mirrored both the controlling statute and the indictment, which alleged that Miller did "sell, transfer, distribute or deliver[ ] ... cocaine...." *Id*.

Miller argues that it was improper for the prosecutor to make this statement at the conclusion of his closing argument at trial:

> [Tarvarcus] Miller is a drug dealer. [Tarvarcus] Miller transferred this cocaine to Justin Harris. I'm not asking you to make him guilty of anything else but that, but he is most assuredly guilty of that.

SCR, Vol. 2, p. 129. Earlier in his closing, the prosecutor made the following argument:

> You know, the law says – he wants to use an artful play of words and use the word sale to you over and over, sale, sale, sale, like money is the key here. That's not the law. This is the law. Y'all can take this back and read it for yourself. It says, sold, transferred, distributed or delivered. Okay, the simple meaning of that is it doesn't matter how you get it from one person to another. If you take an illegal substance and you transfer it to another person, whether you get paid or not doesn't matter. This man is in the trade of dealing drugs in Lafayette County. Whether he profited from this financially or not doesn't matter. I don't care if he made any money off of it. The law doesn't care if he made any money off of it. I submit to you that he did. You can go look on the tape and decide for yourself, but it doesn't really matter.

SCR, Vol. 1, p. 128.

The Fifth Circuit has set forth the test for prosecutorial misconduct:

> This court's review of an assertion of prosecutorial misconduct takes place in two steps. First, we must initially decide whether or not the prosecutor made an improper remark. *United States v. Munoz,* 150 F.3d 401, 414 (5th Cir.1998). If an improper remark was made, we must then evaluate whether the remark affected the substantial rights of the defendant. *Id.* at 415; *Garza*, 608 F.2d at 663. In assessing whether statements made by a prosecutor were improper, it is necessary to look at them in context. *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir.1995).

*United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). The Fifth Circuit has made clear that a petitioner must show more than inappropriate remarks to obtain relief on that basis:

> When the prosecutor's remarks during closing argument are both inappropriate and harmful, a defendant may be entitled to a new trial. *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir.1990), *cert. denied*, 510 U.S. 983, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993). The prosecutor's improper remarks standing alone, however, are insufficient to overturn a criminal conviction. *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Rather, the defendant must show that the prosecutor's remarks affected his substantial rights. *Simpson*, 901 F.2d at 1227. "To determine whether the argument affected the defendant's substantial rights, we examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Simpson*, 901 F.2d at 1227; *Lowenberg*, 853 F.2d at 302.

*United States v. Tomblin,* 46 F.3d 1369, 1389 (5th Cir. 1995), *see also United States v. Pineda-Ortuno,* 952 F.2d 98, 106 (5th Cir.), cert. denied, 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992) ("Criminal convictions are not to be lightly overturned on the basis of a prosecutor's comments standing alone.")

The prosecutor in this case made no improper arguments at trial; he simply reiterated the law as set forth in the criminal statute, the indictment, and the jury instructions. As there was no improper remark, none of Miller's rights were violated. Thus, the Mississippi Supreme Court's resolution of the issue in Ground Three was neither contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. This ground for *habeas corpus* relief will be denied.

### Ground Four: Confidential Informant Cautionary Instruction

In Ground Four, Tarvarcus Miller claims that the trial court erred in refusing jury instruction D-8, a defense cautionary instruction regarding testimony by a confidential informant. The refused instruction cautions the jury to look "with suspicion and distrust" on the testimony of the informant. SCR, Vol. 1, p. 28. On direct appeal, the Mississippi Court of Appeals held:

> We find, however, that the trial court's failure to give a cautionary instruction was not an abuse of discretion. The supreme court has held that a cautionary instruction pertaining to the testimony of a confidential informant is not required where the details of the informant's pay arrangement with law enforcement are disclosed to the jury, and where the informant is subject to cross-examination. *Webber v. State,* 108 So.3d 930, 931–32 (Miss.2013) (citation omitted). While Harris was not paid for his testimony, the jury was made aware of Harris's cooperation with authorities in exchange for "assistance from the D.A. on his charge." Harris was also subject to cross-examination. Therefore, the trial court did not abuse its discretion when it failed to give a cautionary instruction regarding Harris's testimony.

*Miller*, 144 So.3d at 203.

Challenges to jury instructions generally may not form a basis for federal *habeas corpus* relief. *Gilmore v. Taylor*, 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71-71 (1991). *Habeas corpus* relief based upon improper jury instructions is only available when petitioner shows that the challenged instruction rose to the level of a constitutional violation. *Taylor*, 113 S.Ct. at 2121, 124 L.Ed.2d at 322; *McGuire*, 502 U.S. at 72. The burden of demonstrating that errors in jury instructions were sufficiently prejudicial to support a collateral attack on a state court's judgment is greater even than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). To obtain such relief, "[a] petitioner must show that the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process." *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999), citing *Henderson, supra*. This law can also be applied when a trial court fails to give a proffered instruction. In that case, "[t]he relevant

inquiry is whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Galvin v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002)(*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

In the present case, Tarvarcus Miller has not shown that the trial court's refusal to give the requested instruction "infected the entire trial" to the point that his due process rights were violated. The jury was properly instructed by the trial court as to their role and duty, reasonable doubt, presumption of innocence, unanimous verdict requirement, form of the verdict, elements of the crime, and the defendant's choice not to testify. SCR, Vol. 1, p. 14-26. During examination and cross-examination of the confidential informant, the jurors became aware of his role in the controlled buy, his criminal history, and the incentives he had to participate. SCR, Vol. 2, at 75-100. Defense counsel subjected the informant to vigorous cross-examination, ranging from his criminal past to his prior and current use of recreational and prescription drugs. *Id*. at 88-97. The jury thus had ample information to assess the informant's testimony in context, even without the confidential informant instruction.

For these reasons, the Mississippi Supreme Court's resolution of the issue in Ground Four was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. As such, this ground for relief is without merit and will be denied.

## Conclusion

For the reasons set forth above, none of the petitioner's grounds for relief has merit, and the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 6th day of September, 2017.

                                         **/s/ MICHAEL P. MILLS**
                                         **UNITED STATES DISTRICT JUDGE**
                                         **NORTHERN DISTRICT OF MISSISSIPPI**